and Mr. Lowry, we will begin with you. Do we have Mr. Wrights on? Thank you. We have counsel. Mr. Wrights is on? He is. There you are, Mr. Wrights. All right. Very good. So you may proceed. May it please the court, Matthew Lowry on behalf of appellant Dustin Higgs, I would like to reserve five minutes for rebuttal. A structural problem in section 2255 has denied Mr. Higgs what this court termed in Davenport any opportunity for judicial rectification of a fundamental defect in his conviction. I will address today both the structural problem and the fundamental defect in the conviction. Since Davenport, this court has recognized that there is a structural problem with 2255 when, quote, an intervening case of statutory interpretation opens the door to a previously foreclosed claim. That's Davenport at 611. And last year's decision in Davis from the U.S. Supreme Court is such a case. This is what Davis had to say about whether it was a constitutional or statutory interpretation case. Quote, while the consequences in this case may be of constitutional dimension, the real question before us turns out to be one of pure statutory interpretation. That's at page  And this makes perfect sense given what came before Davis. In Johnson, the court had struck down the ACCA residual clause as void for vagueness. And in Welch, the court held that Johnson was retroactive. So, Mr. O'Loury, can I ask you I've been trying to of course think about this. Obviously, you can't get to 2241 unless you can find a way into the savings clause. And I take it right now you're really drilling in on the argument, which is in your brief, maybe you're being a little more clear that the language you just read from Davis shows that the court felt perhaps that it already had established the constitutional issues about residual clauses. And so now it had to decide whether this is a categorical matter or whether the government had switched over to arguing Davis. One looked at the individual facts of the case. So that's a statutory interpretation. So that's one possibility. The other thing that I was picking up from your briefs, but you can correct me if I'm wrong, is that in some cases, and I would like to know which ones particularly, the bar on any further review of a court of appeals decision whether to permit a second or successive petition might create the same kind of statutory barrier that statutory claims were seen to have in Davenport. Because let's suppose hypothetically some court of appeals refuses to allow a second or successive petition because the judges have all been bought off. Well, if the bar on appellate review exists then that would certainly be a miscarriage of justice if something like that were to happen. Or there was a racially discriminatory reason or other horrors that you could imagine. So I want to know what exactly you think your best argument or arguments are for finding your way out of 2255 into 2241. Because we know that mere lack of success just isn't enough. Yes, Your Honor, and really what we're trying to argue, what we are arguing, is first that Davis is a statutory interpretation case. Then beyond that, this is a case where there are several additional factors that make clear that the remedy is inadequate in this case. One of those is that we have the arbitrary disparate treatment of two really identically situated defendants, Mr. Higgs and his co-defendant Haynes. Haynes gets to pursue 2255, Higgs doesn't. No explanation of the reason, and it's arbitrary. There's no reasoning given in any of the decisions, either with respect to Mr. Haynes or Mr. Higgs. There's no mechanism for review of the decision. On top of that, we have the stakes in this capital case. And so when there's really when we're left groping to decide what really was going on in the Fourth Circuit, and you can think about it as long as you want, you can speculate as much as you want, but we have no information. And so to say in that case that in this kind of case that there's an adequate remedy under 2255, it just doesn't add up. I mean, the idea of having habeas review is to give a prisoner a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence. And that just hasn't happened here. Mr. Lowry, can I ask you to react to what's a bit of a hypothetical, but it may help us or help me on the second point that you made regarding the Fourth Circuit, and it's this. Suppose that the Fourth Circuit wrote a different opinion on February 6th of 2020. And in that different hypothetical opinion, they denied Mr. Higgs' request to file a second or subsequent 2255 application, not because he failed under H2 to rely upon a constitutional rule as required, but because they concluded that any error with him being convicted under 924C was harmless vis-a-vis the death sentences, especially in light of the convictions for first-degree murder and what it may have seen as the evidence supporting those convictions. Would your argument change against the backdrop of that hypothetical opinion? Yes, it would. I think it would be, given we talked in the briefs about what the Fourth Circuit has said about what kind of merits review it does on a 2255 successor application, that would be unusual. But if the Circuit got to the merits and said, oh, we're not going to look at this because any error is harmless, then that would have been a judicial determination. And that's sort of what happened from our understanding in Hall, that the Fifth Circuit reviewed Mr. Hall's, Orlando Hall's, application. They denied it. Whether that was right or wrong, he had his shot. If this were a 2254 situation, and we had an opinion akin to the opinion the Fourth Circuit drafted from a state Supreme Court, couldn't we look at that opinion and try to identify reasoning on any front that may have supported the denial, albeit one that was reported in a summary fashion? Well, yes. And if we could do that in 2254, what makes this difficult for me is the Fourth Circuit, of course, is a coordinate circuit in the judiciary. And so we, you know, I mean, I don't mean in any way to make light of it, but we certainly can't sit and review over their opinion writing practices. No, I understand that, but the situation is a little different because under Harrington in a 2254 case, you would say, well, we will sort of give the state the benefit of the doubt and we'll think about what possible reasons the state court could have had for ruling as it did even when it was silent. The problem here is if you think about the possible reasons the state court could have had, it could have, or the court could have relied on harmless error. It could have done something else. It could also have said it was a statutory interpretation case. In one of those sets of circumstances, there would be a 2241 review and some of them it would not. And I think what I'm suggesting is when we're in a situation where we simply don't know the answer to the most important questions. And in that situation, I think the tie ought to go to the runner in a way that there are sort of two competing interests. We don't want to have too many cases going into 2241, but on the other side, we don't want to close off judicial review altogether. And I would suggest that where it's this opaque that in effect we have foreclosed judicial review altogether. So could I ask you, I'm not sure if this is a follow-up question, but it seems to me that a critical point in your argument, a critical move that you make is once, if we can get over the Savings Clause business and once we're looking at all of the details of these 924C convictions, you still need to get to the place in your argument where there's some kind of sentencing package that needs to be rethought because looking at the sentencing transcript itself in the original proceeding, I was left with the impression that the district court, Judge Macidi, the original district court judge really was treating those nine death sentences recommended by the jury as one package, if you will, and then he actually goes and enters a different judgment on the other three, the 924C thing. So I want to know how these spill over back into the death sentences in your view. Well, there's two things that we're arguing. One is that in itself if you have invalid convictions,  convictions, that's a miscarriage of justice in itself and it should be corrected. But the argument that we're making about assuming that an effect on the sentence, the death sentences needs to be shown, what we had here was that one of the statutory aggravating factors was that Mr. Higgs had a prior violent firearms conviction. And so that was an aggravating factor found by the jury. And in addition, the jury had these three 924C convictions and the jury was going to a weighing process. They did find mitigating factors as well as aggravating. And so the aspect of recidivism that you have with prior with the aggravating factor, the recidivism with the 924C convictions added onto that adds greater weight to that statutory aggravating factor and thus could affect the sentence. Mr. Lowery, revisiting this issue of the Fourth Circuit opaqueness, when Judge Magna Stinson is bringing that argument to its closure top of page 6 of her opinion, she says it boils down to arguments the Fourth Circuit got it wrong when it denied Higgs leave to file a successive motion. But lack of success is not enough. Here, isn't there a distinction that can be drawn and needs to be drawn between a court failing to fulfill its constitutional or statutory responsibility to handle a motion versus doing so in a manner that necessarily relays reasoning? If there is such a distinction like that, here we may have the former of the court fulfilling its function, but not necessarily in a manner that as it plays out for this particular request for collateral relief, it comes to fruition that there is reasoning. That's an awfully narrow line that you're asking us to draw for purposes of finding that the 2255 motion gets you into the Savings Clause situation. Well, yeah, the problem is, as I already explained, it really is the opaqueness, but if you step back from the opaqueness, it's just clear under Davenport that if there is a claim that you can't bring in a 2255 successor because the claim is based on a new rule of statutory interpretation, then that is a claim that you can bring in a 2241 petition. And what Davis says is very clear that all the work that is done in Davis is about statutory interpretation. And that's because the argument that the government made in Davis, and the argument that the government made, one of the arguments they made with respect to Mr. Hicks' first successive application, was look, that categorical approach, it may apply to other statutes. It doesn't apply to 924C3. And that was the whole gist of the issue before the Supreme Court in Davis. Does it make any difference that what the Supreme Court wound up doing in Davis? They certainly entertain the statutory argument. I take your point there. They say what they did about pure statutory interpretation. But they wind up in Davis adhering to the same categorical approach that had been around for a very long time, that had been around since 924C3. And I'm wondering about, you know, all these cases where we were dancing on the head of a pin about, you know, what did this cover? What did this other thing not cover? So I'm wondering about the newness of the rule in Davis. Well, it was actually new in the sense that, yes, if you actually, if you look at the footnotes in Davis, you can see that before Johnson, every or virtually every circuit had said, yeah, we think the categorical approach applies to 924C3. And then after the government started making these arguments, three circuits changed their minds and said, yeah, they're right. The categorical approach doesn't apply to 924C3. And so really after Johnson, that whole issue was very much in doubt, and it wasn't resolved until Davis. Is it your position that when courts of appeals are evaluating requests for second or successive petitions that there is no room for harmless error analysis, a merits type analysis? Well, we're not saying that there's no room for merits analysis, but what we are saying is that certainly under 4th Circuit precedent, if you assume that they're following 4th Circuit precedent, and it's very similar in the 7th Circuit too, it's that we just look at take a prima facie kind of look at the possible merit. Don't go delving into every possible merits related issue. And I think if you follow all the issues on the merits that the parties have briefed here, that's a pretty deep dive into the merits. What if the 4th Circuit thought at a higher level, what difference does it make on the 924C convictions? Give Mr. Higgs all the benefit of the doubt, assume he's correct, vacate the 924Cs as a court is faced, unfortunately, with multiple capital sentences. And the reason that he's bringing or requesting permission to bring the second 2255 is not simply to vacate the 924Cs, but because of what he hopes will be a collateral or kind of snowballing effect with respect to his capital sentences. And if they just think that the 924Cs don't affect it, has no effect on it. Well, again, that would be a possible reasoning. They certainly didn't apply that kind of reasoning to Mr. Haynes, who has life sentences who aren't obviously going to be affected by vacating his 924C convictions. So it's really, again, we can speculate and have hypotheticals about why the Fourth Circuit acted in a particular way, but we have no real idea. And  a capital case where there's perfectly logical reasons for the Fourth Circuit to have acted particularly the statutory interpretation aspect of Davis. It's very hard to say, well, there's no avenue of review for Mr. Higgs because the Fourth Circuit might have thought this or that. With regard, Mr. Lowry, to this contrast between Haynes and Higgs, there's obviously a lot of variables that go into a defendant's ultimate sentence. Yes, the offense conduct is an important part of that. There's also prior criminal history. There's also the offender characteristics, the need to protect the community. There might be other variables that got Haynes to a different end than Higgs, other than just the offense conduct. Is that correct? Well, I don't think so because they were both tried capitally and they were both convicted of murder, of first degree murder. And we all agree that Haynes was the person who actually fired the shots, right? That's correct. Mr. Lowry, can I clarify one point? In anything you filed with us or now, are you seeking a stay of what I understand to be an execution date scheduled for January 15th for Mr. Higgs? We have not requested a stay. Our appeal was filed well before the execution date was set. And obviously the court was mindful of that execution date in setting this argument. As I understand it, at this precise moment, the government believes that it cannot proceed with an execution based on a ruling made by Judge McCity from the District of Maryland. Obviously, you know, that's on appeal. That could change if a decision from this court is still outstanding and we are running up to the execution date, then we might need to ask for a stay. We've also asked for a stay in the Southern District of Indiana, so we are hoping that this would be resolved on the merits without needing to burden the court with stay litigation. So, Mr. Lowry, I can't resist. I'm not sure whether it's relevant to anything, but the elephant in the room is obviously the fact that there's going to be a change in presidential administrations five days after this execution date. Yes, and there would be good reasons, in our view, to stay this execution, but as I explained, we haven't made that request of this court. Maybe not there yet. Okay. I think I missed the point in the briefing, but I want to make sure that I understand it. Do you have a stay application right now on file in Indianapolis? That's correct, Your Honor. Okay. Have you received any indication from the district court as to what it plans to do with that motion and when? Well, let me just check so I'm right. The government has responded to that motion, and our reply is due on the 7th, so I'm assuming that the district court will rule soon after that. Okay. I wonder if you could speak a little bit about another ambiguity here that you focus on, which, you know, looking at the verdict forms with respect to Tamika Black, for example, it's answer number 6, but they're equivalent answers for the others. Using the firearm in the commission of a crime of violence that is either the murder or kidnapping of Tamika Black, and you've pointed out that kidnapping isn't by its nature, it's not inevitably a crime of violence, so how important is that argument to your position? Well, it's important because I think that's the clearest reason why the convictions are invalid, because kidnapping is not a crime of violence under Fourth Circuit precedent, and also under Runyon, which we submitted as supplemental authority, if there's ambiguous verdict like this one, then both of the predicate offenses need to be actually crimes of violence, and so because kidnapping is not a crime of violence, the 924 convictions are invalid. We have also argued that felony murder is not always a crime of violence, but I think that the kidnapping is the clearest. So, I have two quick questions. I know we're approaching a rebuttal time. One of them is that this flaw seems to have been apparent for a long time, so I wonder about that, and I also wonder, and the government mentions this in its brief, the first finding of the jury for each of these victims was not felony murder, it was first-degree premeditated murder. How does that factor in? Well, I think under the same ambiguous verdict principle, if we don't know what type of murder the jury was relying on, it could have been felony murder or premeditated murder. So, disambiguation again. Okay, that's fine. If you want to save your five minutes, you are in that time at this point. Yes, I would like to save the remainder for rebuttal. Certainly. Thank you. Mr. Reitz. May it please the Court. Brian Reitz for the Respondent-Warden. Mr. Higgs has failed to make a compelling showing that Section 2255 is inadequate or ineffective to address his claims. This case is hauled in every legally relevant way, except apparently one, and that is what Judge Scudder pointed out, is that Mr. Higgs wants this Court to set in review of the Fourth Circuit's opinion writing practices. That is what this case boils down to. So, Mr. Reitz, can I ask you, this is maybe a much more general question. As you are, of course, well aware, there's no ability to appeal, to seek a petition for rehearing, to go to the Supreme Court on certiorari. He doesn't happen to mention mandamus, but essentially there's a pretty strong prohibition of appeal for Court of Appeals rulings on permission to file a second or successive motion under 2255 or petition under 2254. And I'm wondering whether that itself, in extraordinary circumstances, is the kind of structural flaw that concerns us about this. You know, you found out the Fourth Circuit was just flipping coins, or you found out they were bribed, or you found out that, you know, there was some other utterly arbitrary reason behind the decision. So, and the other thing I want to throw in there is, in an analogous area, in granting certificates of appealability, the Supreme Court has said in cases such as Buck against Davis that this is not a merits moment. This is just, is there something fairly debatable by jurists of reason? And surely something like that is going on with second or successive petitions, too. So I wonder, it's not really that we're reviewing the Fourth Circuit, but we all need to follow the rule of law, and if a court hasn't done that, why shouldn't you give somebody another shot in the district court? So I will try to take those questions in turn. First, I know Your Honor, in the opening portion of the argument, mentioned a decision based on racial prejudice or something like that. I think it's fair to say in such egregious circumstances, it might be wise for the court to look at whether there's another exception. So we aren't ruling out that possibility in egregious circumstances, but again, it is Mr. Higgs' burden to make a compelling showing that  Mr. Higgs, in the opening portion of the argument, said, we don't know, and the tie should go to the runner. Well, that's quite the opposite. Mr. Higgs is the petitioner, and under this court's precedence, he has to make a compelling showing that's his burden, and he can't do that by speculating that another circuit improperly applied the law. Mr. Wright, I think his point, I think he would say, but you're begging the question a little bit. When the Fourth Circuit writes a summary order like it writes, he's not going to be able to develop evidence, facts, information from the court's decision making process to make the kind of showing that you're making, or that you're talking about. So what is it that someone situated like Mr. Higgs can really do other than what he's doing? You can call it speculation, but what's he supposed to do? Judge Wood did mention the possibility of mandamus. I know that is something of a Hail Mary, but that's possible. This is somewhat ancillary to your question, but I would say what he could do here, he filed a 28J letter including Runyon, which is a helpful case from the Fourth Circuit. He has that in Davis. So it seems like that offers another opportunity to file a motion for a second or successive petition, 2255 petition in his district of Davis.  that would be the best case to proceed. So that is one option, but he can't get relief under the savings clause based on speculation. Understanding that it is something somewhat up in the air why the Fourth Circuit did what they did, but of course, I don't think this court or any other court should speculate that a sister circuit acted improperly. That type of speculation surely cannot be an avenue into 2241 or the savings clause. Can you explain the differential treatment between Haynes and Higgs for this purpose? I mean, I totally take Judge Brennan's point. I mean, everybody's got their own background, everybody's got things, but Haynes was the person who actually murdered these three victims. Higgs had a lot to do with it. I'm not, you know, I understand. He was sitting there in the car, you know, gives him a gun and so on, but what really is the difference? Haynes might look worse. I think the best guess here is the particular type of claims they raised. As we said in our brief, there is a pretty big distinction, I think, arguing that murder is not a crime of violence under the elements clause and aiding and abetting. If you look at 18 U.S.C. 2, it does incorporate the acts of the principle, so we think that it likely is a crime of violence, but 18 U.S.C. section 2 doesn't explicitly have an element, the use of force, in the way that murder does. Why is Mr. Haynes an aider and abetter if he kills them? Why isn't he a defendant? That is the particular claim he raised, Your Honor. He raised the claim that he was aiding and abetting the 924C. I mean, of course, the government doesn't believe that is likely to be a successful claim. I can't believe that would be the government's position. But just at a very superficial level, there's a difference between 18 U.S.C. 2 and the murder section 1011, or 1011, excuse me. But anyway, I want to step back from that because we can speculate about what the Fourth Circuit did until we're blue in the face, and the question comes down to is 2255 structurally inadequate if properly used to raise a Davis claim? And the answer to that question is no. Why is the answer no if there's no way to understand what the First, I'll just call it the First Court of Appeals today, it's the Fourth Circuit tomorrow, it could be the Seventh Circuit, you know, the next day it could be the Eleventh Circuit, I mean, anybody without some kind of explanation. The reason we're denying, I think we do actually give an explanation in all of our orders. So I will preface, I understand that the Court here would have preferred something in writing, I think that's understandable. In my experience, this Court maybe would have granted even the petition and almost certainly would have issued some written merits discussion about it, but 2255 and collateral review in general doesn't entitle a defendant to a written merits decision, and this Court's Savings Clause jurisprudence doesn't require or doesn't inquire either whether there is a written merits decision in another circuit. It's just a question of whether structurally 2255 is available for these types of claims under a proper use and no one really hears... Proper use by whom? A proper use by the defendant or a proper use by the Court? That's why I worry a little bit about the Buck against Davis point because there are these gatekeeper rules sprinkled throughout the collateral attack things, whether it's certificates of repealability, permission for second or successive petitions, they're all gatekeeping. And they're not supposed to be the merits. And it makes me wonder about the role of harmless error in all of this. It makes me wonder about whether there needs to be some way of making sure that the Court of Appeals was, as a legal matter, interpreting the scope of this statute correctly. To start, and I hate to repeat myself over and over, but and I hope to continue your question as well, but at the very bottom we don't think that this Court or another Court can stand in review of a sister circuit, but at the very least the Fourth Circuit allows a prima facie look at the merits, and I think Judge Scudder hinted at this, it is not dissimilar, excuse me, it is exactly the same as Hall. We look at this Mr. Higgs' sentence here, and he's challenging a term of years on his gun conviction when he has nine death sentences. I don't think it takes a deep dive into his sentence or the record to indicate the collateral for legal review is in these circumstances is the seeking a lack of meaningful relief. Mr. Reitz, what do you can you give us the benefit of your response to Mr. Lowery's point that sure Davis in the main is a constitutional holding on begginness grounds but along the way Davis has meaningful conclusions that are reached on the basis of statutory construction. Nothing wrong, odd, unfamiliar in the law with thinking of cases as resting on a few different grounds. Yes, your honor, I would like to start by specifically answering that and moving out and explaining why the sort of bilateral case doctrine doesn't make sense. David, the best way to look at these cases is to look at their holdings and the Supreme Court's holding in Davis was constitutional based. It was about the due process clause and that the residual clause of 924C was unconstitutionally vague. It is not surprising, I don't think, that when a court is asked to review the constitutionality of the statute, of any statute, the analysis is going to be mixed between statutory and constitutional. Mr. Reitz, I hate to interrupt your train of thought, but there's again another area in which something similar to this happens and that's if there's a procedural predicate to reaching the substantial issue of constitutional law. You're familiar, I'm sure, with Slack against McDaniel where the Supreme Court said the procedural issue itself isn't what in this instance 2255 refers to, but if you need to get over that procedural hurdle to get to the underlying substantial constitutional question, the court can do both of those. They're both within the scope of the statute. And this strikes me as very similar. There was almost a procedural predicate before the court could reach the constitutional issue in Davis, which was to make sure that everybody was on the same page about what this statute meant, and that's what Justice Gorsuch says. Having settled that, then you're right. You know, you get finally to the point, now that we know what it means, we are going to extend 924C to the Leo Cal situation and to the Johnson situation and all the rest. But why isn't a chain of reasoning similar to Slack appropriate here? Let me answer this the way that I was intending to get to my second point to Judge Scudder. We don't think that in this context cases can be bilateral. We think it's a binary decision. Cases are either constitutional or not. The reason being the text of the statute, the intent of the statute, and this court's precedent surrounding that. So Congress enacted 2255, and it specified constitutional. We think that indicated that the cases were either constitutional or not. I think that's how this court took it when it passed 2255. I think that's also the intent that Congress had in mind. Congress passed 2255 to limit collateral review and funnel these cases into their district of conviction. But if cases can be duly  then that savings clause and that limitation really has no meaning because defendants, prisoners could then form shop and if cases are both susceptible to being both constitutional and statutory, they could raise them in their preferred circuit, which I think essentially eviscerates this distinction and would violate congressional intent. Moreover, this court's precedence here, I don't think this court has, I'm certain this court has never found a case to be both constitutional and statutory in this context and nor do I think this court has even contemplated that a case could be duly both. I think that congressional... Aren't you over reading 2255 a bit? The original, the first part of 2255 actually encompasses both constitutional violations and statutory violations and only gets to the what I'll call the fancier parts. To get your certificate of a constitutional problem and you certainly have to show a constitutional problem if you're going to do a second or successive motion, but that's where I go back to Slack which also is dealing with precisely the same language. It's a constitutional ruling, but the binary argument that you're pushing doesn't fit Slack very well and so if it doesn't fit that, then why does it fit this? I think for the reasons I said then, if Your Honor is unsatisfied with that, let me just step back and say if Mr. Higgs is irrelevant, if Mr. Higgs is correct that cases are susceptible to being both constitutional and statutory and Davis is one of those, Davis would still be cognizable in a 2255 H second or successive motion because 2255 is available for constitutional cases and if Davis is a little column A a little column B, it can be raised in a 2255 petition. So 2255 still would not be structurally inadequate in that situation. So I don't think I think this argument is something of a snake eating its own tail because it leads back to the same place Mr. Higgs could raise and I know that the Fourth Circuit denied it, but a petitioner, a claim in a 2255 second or successive petition. And so it all gets back on the first prong to whether this court should stand in review of the Fourth Circuit's opinion writing practices and we don't think it should. It's not really I really want to push back on the stand and review. Anytime you are moving over to 2241, you're doing so at least in the 2255 context because there was some structural flaw and whether you're engaged in some form of collateral review of colleagues of your own court or court from another circuit or whatever, it's just a different kind of mechanism. So I don't think there's anything necessarily disrespectful about it or standing in review of. It's a different setting. Your Honor, I think that is maybe generally true, but I don't think that can be squared with the argument that Mr. Higgs is pushing here. Mr. Higgs is saying that he doesn't know why the Fourth Circuit decided what it did. So therefore I'm quoting him, the tie should go to the runner, but that is simply insufficient under this court savings clause jurisprudence. And if the court has no further questions on the first Davenport prong, I'd like to move on to the second. The same reason in one more, I think, as discussed in Hall, Mr. Higgs cannot meet the miscarriage of justice prong. First of all, and as has been mentioned, he's challenging a subsidiary sentence. Same was true in Hall. Even if he wins here, he will have nine death sentences. And I think there's a second point that I at least alluded to in my brief that I wish I would have stressed a little bit more. Mr. Higgs, even by his own argument, can't show that he was actually innocent of the 924C. Again, if we accept his argument as true and kidnapping and felony murder don't qualify as 924C crimes of violence, he was still charged and convicted with first degree premeditated murder. That was listed as an option for the 924C conviction. Mr. Higgs, on page 26 of his reply brief, agrees that federal first degree premeditated murder is a crime of violence. So the best he can do is show a potential charging information and instructional overbreath, but he can't show that he's actually innocent of that 924C conviction. So the fact that he's challenging subsidiary sentences and he's not actually innocent of the crime he's challenging means that he cannot show a miscarriage of justice. What do you mean by actually innocent? Are you talking about just as a matter of fact with what happened in connection with the offense conduct? That a gun was used, it was his gun, etc.? So forget the categorical, modified categorical. As a matter of fact, they used guns to kill these three victims. No, no. I mean it deeper than that, Your Honor. If we... Sorry if I was unclear. Mr. Higgs, even taking his arguments as true has a qualifying predicate for 924C purposes. So we can ignore the kidnapping, we can ignore the felony murder. And you're saying that just because of the verdict the jury returned on the 1111A premeditated murder counts? Yes, Your Honor. He was charged with premeditated murder. The jury convicted him on three of those counts. Those are unquestionably crimes of violence under 924C. And murder was listed as one of the 924C predicates, so he is guilty of the 924C. And we don't think that petitioners can show miscarriage of justice in this particular circumstance when they are clearly guilty of the crime they are charged with. And it's beyond a factual argument. It was actually charged and tried to the jury, and so that is taken as true. And there's no miscarriage of justice in that circumstance. So as a matter of methodology, it sounds to me as though the government's arguing that we ought to do something similar to what happens in the 848 cases where you're not really sure what the predicates were, but you can look at the rest of the verdict to see, say, a unanimous jury on distribution of heroin or unanimous jury on one of the other predicates. Is that what you're saying? I think that's fair. Again, I think there's a lot of reasons the government wins, including more than one in the miscarriage of justice, but I think that's a fair way, as far as I can tell, to look at the argument that we just made. Yes. Mr. Reitz, do you agree with Mr. Lowery's summary of just where everything stands as we're having this argument here this afternoon with Mr. Higgs and the execution date that is I believe so. I'll try to review as quickly as possible, just in case. I think I agree, but just in case there's something that was missed. Mr. Higgs has filed another 2241 petition in the Southern District of Indiana raising the Brady claim. The response is too soon. Mr. Higgs won, or perhaps a better way to put it is the government lost litigation in the District of Maryland about amending the judgment for the location of the execution. The government has appealed to the 4th Circuit. Briefs are due, I think, the 7th and 9th in that case. Don't quote me on that, but it's something like that. That is the landscape right now. And the 2241 on file in Indianapolis has an accompanying stay request with it. I believe that is correct, too, Your Honor. Our office is not handling that one, so I'm a little distant of that, but yes, I believe there's a stay accompanying that unlike here. If there are no further questions, we would ask this Court to affirm the District Court. Mr. Higgs has failed to make a compelling showing that 2255 is structurally inadequate and the reasoning this Court the reasoning in Hall, as this Court said, is equally applicable here on the 1st and 3rd Davenport Prongs. Thank you. Thank you, Mr. Wright. Mr. Lowry. Yes, thank you, Your Honor. First off, on Mr. Wright's argument that Mr. Higgs is not innocent, going back to the 1974 Davis decision from the Supreme Court, it's clear that a conviction for an act that the law does not make criminal is a miscarriage of justice. And we know that the residual clause is void for vagueness, so it's the acts are not criminal under the residual clause, and as we have shown, the conviction is also invalid under the elements clause as shown very recently by Runyon. So the argument that he's not innocent is just really turning us back on the whole categorical approach. I would like to point out that the Fourth Circuit has never said, up till now, that you can actually bring a successive petition under Davis. We're not saying that the Fourth Circuit did anything that it took some made some improper application of the law. What we are saying is that if you look at Davis, all the work that's done there is statutory interpretation. The government did not make any constitutional argument in Davis. It was purely a case about statutory interpretation with a constitutional ruling tacked on. The idea that a case cannot have both statutory and constitutional implications or that that can't be a vehicle for the savings clause does not really I don't really see how that possibly works if the fact that you cannot bring a successive 2255 based on a new rule of statutory law. That's what the whole Davenport line of cases is about. And so, if it is the rule of statutory interpretation that is blocking the ability to get 2255 review, then that is exactly what we're talking about in the savings clause. Mr. Lowery, can you rewind, though? Because I want to make sure that I caught your point. I thought did you say that you're not making the argument that the Fourth Circuit committed any error in denying the request to file a second 2255? Because I thought Mr. Higgs would say, of course they made an error. The error was that Davis was a constitutional decision, at least in part, maybe in large part, and I should have had permission granted to file a second 2255. And I had understood this proceeding to be, well, when that Plan A didn't work, he quite understandably and quite ably represented by you and your team, then resorted to 2241. No, but what I'm saying is if the Fourth Circuit said, if the Fourth Circuit said we can't review your 2255, you're relying on a statutory interpretation case, there would be nothing improper about the court saying that. Then we could come and say, here's our 2241 petition. So that's more or less the Webster situation where the Fifth Circuit said, we can't do anything about this because it's purely statutory. It doesn't meet the criteria and so the 2241 ultimately went forward. Exactly. And on the point about aiding and abetting, I do want to mention it's in our reply brief, but that was an argument that was not raised below. It was raised in like a paragraph here which didn't explain or offer any support for the argument, but I also I find that is the most speculative and least likely reason for any of the rulings by the Fourth Circuit. So are you arguing the obvious is that Davis was statutory, the Fourth Circuit just said it's got to be constitutional, therefore no. Yes, that's correct. There are no further questions. Thank you very much. All right. Well, thank you very much to both of you. These were questions. The Court will take this case under advisement and we will be in recess. Thank you.